Cite as 2026 Ark. App. 12

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-24-525

| | |
|---|---|
| HOLLY ANN-MARIE CHILDERS AND BILLY CHILDERS<br><br>APPELLANTS<br><br>V.<br><br><br>DONALD PATTERSON AND PATRICIA PATTERSON<br><br>APPELLEES | Opinion Delivered January 14, 2026<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FCV-22-975]<br><br><br>HONORABLE R. GUNNER DELAY, JUDGE<br><br><br>AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Appellants Holly Ann-Marie Childers and Billy Childers appeal from the April 17, 2024 order of the Sebastian County Circuit Court denying their claims for breach of contract, fraudulent misrepresentation, and related causes of action arising from their purchase of a residence from appellees Patricia and Donald Patterson. On appeal, the Childerses argue that the circuit court's findings of fact were clearly erroneous, that the court mischaracterized key evidence concerning the home's foundation, and that the court improperly required proof of intent. We affirm.

## I. *Facts and Procedural History*

In September 2021, the Childerses and Pattersons entered into a real estate contract pursuant to which the Childerses offered to purchase a residence located at 10304 Castleton

Street in Fort Smith, Arkansas (the "Property"), from the Pattersons. Prior to closing, the Pattersons provided a seller property disclosure statement (the "Seller Disclosure"). Although not contractually required to do so, the Pattersons provided a home inspection report to the Childerses that had been prepared for a prior prospective buyer by Nick Rodebush of ProView Home Inspections, LLC (the "Rodebush Report"), which recommend further evaluation by a foundation specialist or structural engineer regarding exterior masonry cracking that was larger than typical cracking.

In response, the Childerses retained structural engineer Alvin L. Prieur, Jr., who inspected the home and issued a written report on September 21, 2021 (the "Prieur Report"), concluding that he observed no structural problems. After receiving that report, the Childerses elected to proceed with the purchase and requested only limited deck-related repairs, which the Pattersons completed prior to closing.

Approximately one year later, the Childerses filed suit alleging that the Pattersons had failed to disclose known foundation defects and had misrepresented the condition of the Property. At trial, the Childerses relied heavily on a January 27, 2010 document— predating the sale by more than eleven years—prepared by Power Lift Foundation Repair Company, a licensed residential- and commercial-foundation-repair company ("Power Lift"). Don Patterson had asked Power Lift to inspect some cracks in the exterior masonry of the home and to estimate the cost of repairs ("Power Lift Estimate"). The Power Lift Estimate, which totaled $18,400, included a diagram of the house, a legend notating cracks in the exterior masonry, notations referencing elevations in the flooring (throughout the house up to 2.25

and 2.5 inches), and indications for needed pier placement. Other than the exterior masonry cracks, there were no other issues listed from Power Lift's inspection of the home. No repairs were performed pursuant to that proposal, no foundation failure was diagnosed at that time, and the Pattersons believed that there was no foundation issue.

The circuit court heard testimony from multiple witnesses concerning the Power Lift Estimate, including a Power Lift representative; structural engineer Alvin Prieur and foundation expert Rob Johnson, both retained by the Childerses; the Pattersons; their contractor, D.J. Kelsey; and their realtor, Andrew Brown. The court also received evidence concerning substantial renovations made to the home prior to sale, the contents of the Seller Disclosure, the Rodebush Report, and the Prieur Report commissioned by the Childerses themselves before closing.

Following a bench trial on March 28, 2024, the circuit court entered a written order on April 17 containing detailed findings of fact and conclusions of law dismissing all claims. The Childerses filed their timely notice of appeal on May 15, and this appeal followed.

II. *Standard of Review*

Following a bench trial, we determine whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence, and we review the circuit court's conclusions of law de novo. *Richeson v. Elkins*, 2025 Ark. App. 482, at 5, __ S.W.3d __, __. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire record, is left with a firm conviction that a mistake has been made. *Id.* We view the evidence and all reasonable inferences arising therefrom in the light

most favorable to the appellee. *Id.*; *see also AgriFund, LLC v. Regions Bank*, 2020 Ark. 246, at 6, 602 S.W.3d 726, 730. When there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *Richeson*, 2025 Ark. App. 48, at 5, __ S.W.3d at __. We recognize the circuit court's superior opportunity to determine the credibility of witnesses and the weight to be given to their testimony. *Id.*

### III. *Discussion*

### A. Findings of Fact and the Power Lift Estimate

The Childerses first argue that the circuit court clearly erred in its treatment of the 2010 Power Lift Estimate, contending that it conclusively established the existence of a known foundation defect. Our review of the record does not support this contention.

The circuit court expressly considered the Power Lift Estimate and heard extensive testimony regarding its meaning and significance. Although the document referenced exterior masonry cracks and included elevation measurements, the circuit court credited testimony establishing that such conditions can exist without a compromised foundation and that elevation variations alone do not mandate a finding of structural failure. The record reflects that the Power Lift Estimate contained no express diagnosis of a foundation defect, no explanation of handwritten notations, and no statement attributing observed cracks to foundational failure.

Under our standard of review, when there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *See Richeson*, *supra*. Where

testimony conflicted regarding the significance of the Power Lift Estimate, the circuit court resolved that conflict in favor of the Pattersons; thus, there was no clear error.

## B. Existence and Knowledge of Any Defect at the Time of Sale

The Childerses next contend that the circuit court erred in finding that they failed to prove the existence of a foundation defect prior to the sale or the Pattersons' knowledge of such a defect. This argument again invites us to reweigh evidence and reassess credibility, which we will not do. The court, as the fact-finder at a bench trial, may accept or reject any part of a witness's testimony, and its conclusion on credibility is binding on this court. *See, e.g., Brown v. Shipley*, 2022 Ark. App. 246, at 11, 646 S.W.3d 635, 641.

The circuit court heard testimony that no interior cracks, door misalignment, or other classic indicators of foundation failure were observed during the relevant period by the Pattersons or their contractor. The court also considered evidence that no professional had diagnosed a foundation defect before closing and that the structural engineer retained by the Childerses concluded that the home had no structural problems at the time of inspection.

Although the Childerses presented expert testimony suggesting that later-discovered damage must have developed over a longer period of time, the circuit court was not required to credit that testimony over contrary evidence, including the absence of contemporaneous complaints, the lack of interior indicators during ownership, and the conclusions of the structural engineer retained by the Childerses before closing. The fact that foundation-related issues were discovered after the sale does not compel a finding that such defects existed, or were known, at the time of sale. It is within the province of the finder of fact to

resolve conflicting evidence and to determine witness credibility. *See Rider v. Longbow Ranch, LLC*, 2017 Ark. App. 444, at 2, 526 S.W.3d 915, 917.

## C. Seller Disclosure and Contract Claims

The Childerses next argue that the circuit court erred in concluding that the Pattersons did not breach the Seller Disclosure or the real estate contract. We disagree. The Seller Disclosure required the Pattersons to answer questions on the basis of their knowledge and belief. The circuit court found that the Childerses failed to prove that the Pattersons knew of settling, substructure defects, or material conditions affecting the Property's desirability before the time of sale and that their responses were truthful to the best of their knowledge. That finding is supported by evidence that the Pattersons had lived in the home for years without experiencing interior cracking or functional issues and that no professional diagnosis of a foundation defect existed before closing.

The circuit court also found that the Childerses did not rely solely on the Seller Disclosure. Moreover, the circuit court found it significant that the Childerses were independently aware of exterior cracks. After receiving the Seller Disclosure and the home-inspection report recommending further evaluation, the Childerses commissioned their own structural engineer and obtained a structural-engineering report that reported no structural issues and nonetheless elected to proceed with the purchase without renegotiation. The court reasonably concluded that this professional opinion was a decisive factor in the Childerses' decision to proceed with the purchase. These facts support the court's conclusion that the Seller Disclosure was not breached and that no material misrepresentation occurred.

And although the Childerses testified that they relied on the Seller Disclosure, the circuit court was entitled to weigh that testimony against their actions, including their commissioning an independent expert and proceeding with the purchase after receiving a favorable report. We hold that the circuit court's finding regarding reliance is not clearly erroneous.

## D. Renovations and Alleged Concealment

The Childerses further argue that renovations performed by the Pattersons were intended to conceal defects. The circuit court rejected this contention, finding that the renovations were consistent with routine updates intended to improve marketability and that no evidence established intentional concealment. The court credited testimony that no known defects were concealed and that no interior cracking was observed during the renovation process.

As previously stated, credibility determinations are within the exclusive province of the circuit court. *Rider*, *supra*. We defer to the circuit court's finding that the renovations were not undertaken to hide known defects and affirm on this point.

## E. Fraud and Intent

Finally, the Childerses argue that the circuit court improperly required proof of intent in evaluating their misrepresentation claim. We disagree and note that this argument misinterprets the circuit court's analysis. Claims for fraudulent misrepresentation require proof that the defendant knowingly made a false representation with the intent to induce

reliance. *Mighty Good Sols., LLC v. Retail Firm, LLC*, 2025 Ark. App. 452, at 22–23, __ S.W.3d __, __. The circuit court correctly articulated and applied this standard.

The circuit court did not impose an intent requirement where none existed. Instead, the court found that the Pattersons did not knowingly make false representations or intend to deceive the Childerses and that their disclosure responses were truthful to the best of their knowledge. In reaching that conclusion, the court noted that the Pattersons voluntarily provided the prior inspection report, which recommended further evaluation, even though they were not required to do so. The circuit court did not impose an improper legal requirement; rather, it correctly concluded that the Childerses failed to establish essential elements of their fraud claims.

IV. *Conclusion*

The circuit court conducted a thorough bench trial; carefully evaluated conflicting testimony, extensive expert evidence, and the credibility of witnesses; ultimately made detailed findings of fact; and correctly applied Arkansas law. The Childerses' arguments on appeal largely invite this court to substitute its judgment for that of the fact-finder, which we decline to do. The Childerses have not demonstrated that any finding was clearly erroneous or that the circuit court misapplied the law. Accordingly, we affirm.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Bryant Law Partners, LLC*, by: *Glen E. "Trae" Bryant III*, for appellants.

*Gean, Gean & Gean*, by: *Roy Gean III*, for appellees.